All right. Counsel, allow for the appellant. Please identify yourself. You have 15 minutes. Each side has 15 minutes. Thank you, Your Honor. May it please the Court, my name is Robert Schelles, and I am attorney and legal counsel for the receiver of Independent Trust Corporation, PricewaterhouseCoopers. We are here today in our appeal of two summary judgment rulings that were issued by the trial court in this case. And the case involved a declaratory judgment action against the insurance company, Kansas Bankers Surety Company, also known as KBS, related to a $10 million financial institution crime bond policy. The standard of review on this appeal is... They say you changed your position with respect to that March 10th letter. The court did rule and hold, for some reason... It's a critical part of his holding, isn't it? It is a critical part of the holding. Let me read you something from the letter. Confirming our phone conversation. This is a lawyer, one lawyer to another lawyer. I assume that Towley is a lawyer. He is the vice president of Kansas Bankers, but I assume he's a lawyer. I can't represent that. I don't know. He was deposed. He was deposed, and he provided an evidence deposition, and you're going to hear... Hereby provides notice that a loss of a type that may be covered by the bond has been or will be incurred. Correct. Although the exact amount is currently unknown, it may exceed $63 million. Correct. Now, the judge, for some reason, decided that, what, you had abandoned that letter and that position by your later pleadings? It was a very curious ruling for us because we never waived nor abandoned our claim at that March 10, 2000 letter constituted notice. Importantly, we include a copy of that letter in our exhibit binder. I know. I've got it. And it's part of the record. I know. So for the court to ignore that letter... But he didn't ignore it. He just said that you abandoned the position that the letter had taken. Well, we did argue various different accrual dates. Yeah, you argued the June of... Yeah. One of which was June 1, 2000. Another one of which was that March 10, 2000 date. Yeah. And we pointed that out to the court in two different motions to reconsider. Court, this document is part of the record. This document constitutes notice. Well, he talked about bend the whole, you know, which, you know, you have to go back a long way in law school to find that one. That's true. It's an archaic... It basically says you can't change your positions once you've adopted one. That's correct. That's what the rule states. We don't believe we ever abandoned the March 10, 2000 date. And it was really a critical point because the court determined in its ruling that the bond should... Well, you never went to trial on this case. You had filed a cross motion for summary judgment. When you file a cross motion for summary judgment, are you bound by every law? You know, the other thing with mend the whole is that the circuit court judge cited Liberty Mutual. And in Liberty Mutual, the holding was that mend the whole didn't apply. And it's always a little caution flags go up when a case that says the doctrine does not apply under those facts is cited to support applying that doctrine in this case. It was a very curious ruling, Your Honor, and we believe that it was erroneous. And for the court to determine that no notice was provided prior to the April 14, 2000 receivership filing just was not supported by the record. We believe not only did notice properly be given to KBS by the March 10, 2000 letter and by the telephone call, KBS had actual knowledge of the loss via those two mechanisms. And Mr. Towle, their senior vice president, also waived notice by specifically testifying it as evidence deposition. I wouldn't walk down that waver road if I were you. Let me ask you regarding claims themselves into this bond, crime bond. Because I'm certainly not very well acquainted with it, but what I was hoping to do is clarify based on a comparison to malpractice insurance. And there's claims, I think, claims policies where the claim has to be made within the policy term of the malpractice insurance. And then there's notice coverage that the notice can be provided after the policy lapses, but the event had to have occurred within the policy life. What sort of, how does this crime bond claim work? Claims are covered as long as they are discovered during the policy period. It doesn't matter whether or not the actual loss occurred during the policy period. It's whether or not they are discovered. And here I don't think there's any... Well, that can't be quite right. I mean, it has to be discovered during the policy period and the event had to have occurred during the policy in order for it to be covered. Well, no, that's not necessarily the case. The loss could have occurred before the policy period, and this is actually the renewal of a previous policy. The loss could have occurred prior to the policy as long as it's discovered during the policy period here, which was 1999 to 2000. So the insurance company would be liable for some sort of criminal act before its policy covered? Well, I don't think that's really an issue here. It's not an issue here. And specifically, there were thefts that occurred during 1999, during the policy period. I don't really think that's a salient issue for the court to address. There are a number of issues which are very important. I know that the court has had the opportunity to read the briefs, but I would like to briefly touch upon the salient points this morning. Let's go back to the letter. I'm not going to let you off the hook on that letter. Do you think that that letter, I imagine you're going to say yes, definitely, complied with all of the requirements for notice under the policy? I think the purpose of a notice provision is to give the insurance company enough information to spark it into action, whereby it can either investigate or not investigate, but they have enough information at their disposal to actually investigate. And that's exactly what happened here. So would you say that the March 10th letter is sufficient notice under the policy as a matter of law? I would say yes. In which case, you should have gotten summary judgment. No question, but I would also point the court to the telehealth policy. Is the question of notice usually a question of law? No, it's a combined question of law and fact. And I think here that the facts... What other purpose would the letter have served if it wasn't meant to serve as notice? I think you're asking the wrong party, because it's our position that... I'm hoping that they're hearing the question. They'll be prepared to answer it. I think it's pretty clear that the letter provided enough information to give Kansas bankers an opportunity to investigate the loss. And that's exactly what the notice requirement requires. And I would also point the court to the argument that we raise at page 6 of our reply brief. There was a companion case involving Intercounty Title Company, which is a related entity to the InTrust fiasco. And Intercounty provided notice on March 9, 2002, to its reinsurer, Fidelity. And that's an important point, because it was one day prior to the notice being provided here. And Fidelity thought enough of the notice it received to spark itself into action. It hired Deloitte and Tooch to investigate the loss. They were able to determine that there was a $68 million hole in the escrow account. Certainly, if Fidelity had enough information one day prior to KBS getting notice here, KBS had enough information at its disposal to investigate a loss, whether it did so or not. So for that reason, additionally, I would submit that there was proper notice. And I would ask the court to take a look at that case, the Independent Trust Corporation v. Fidelity case, to see how... Is that in your briefs? It's cited to at page 6 of our reply brief. Is that Justice Gordon's? I don't recall, but it was well-reviewed. Joe Gordon. Joe Gordon. Justice Joseph Gordon. This is the handsome Justice Gordon. Well, let me ask you this. There seems to be a lot in the two orders that were issued by the Circuit Court, but it seems that was addressed in those two orders. And the question is, what's the narrowest issue that we should address on this appeal that can send it all back? Well, I think the court has... Well, summary judgment for you, I suppose, would be the narrowest issue that would be... Well, there would be... But on what material fact? Well, there's no question that we're seeking reversal of the trial court summary judgment rulings, and we would like this court to enter judgment for the receiver for coverage, and in that judgment, award indemnification under ensuring agreements... So your position is that summary judgment should have been granted to you, and not simply that a material fact exists? Well, no question. There is no material fact that would preclude summary judgment for the receiver. Well, what about the nature of the policy and the requirements that you have to comply with before the policy would be triggered? Well, there are requisite elements and exclusions... Certainly, the March 10th policy with respect to it being triggered. Proof of loss, for example. Proof of loss. There was no proof of loss before. I would point out to the court with respect to proof of loss that the receiver was granted summary judgment on the propriety and timeliness of the proof of loss statement, and... But then the judge backtracked, didn't he? No, I don't think so. When he seconded his opinion, he backtracked and said, we really don't need to get to that, although I did find that you provided adequate proof of loss. But then he went back and looked at it again and said, nah, but you didn't really give any notice before the receiver was appointed. Well, he did not specifically overturn his previous ruling... And they didn't appeal it, but at the same time... And it's a bad deal. I know, I understand your position is that you would suggest that we would be in the position where we could find in your favor, and then preclude them from arguing the issue of proof of loss because they never cross-appealed on that finding. On that particular narrow issue, I believe the record is clear. I'm not sure that you're going to go down that road with any great success either. It seems to me that really you're depriving them of an opportunity to argue that particular issue, too, before us. Well, I certainly don't want to... Without the necessity of a cross-appeal. I mean, they won. Let's face it. I mean, they won in the trial court, and that was the end of the matter. I don't think they were required to cross-appeal just to protect themselves. They could have, I suppose. I certainly would have if it was me. Well, yeah, but maybe... Whether they have to or not isn't really my major focus today. I understand that. It's a very narrow issue. Instead, there are broad issues with potential negative impact on the state of Illinois. And we're talking about the public policy one? Public policy argument. And that's why I would ask the question just how broad do we have to write the decision here? Do we have to address whether the public policy is consistent? You don't want to throw out that Section 12, do you? It's one of our main intentions. That Section 12 is in policies all over the country. It's been looked at by a variety of courts, including one right next door here in Indiana. Pretty good opinion that you brought up. Yes, but there is no authority in the state of Illinois, meaning that this is a matter of first impression as to whether or not that type of a termination clause applies. But we are allowed to look at how other states have handled this Section 12 problem, aren't we? You're entitled to look at it, and it might be deemed to be persuasive authority, but it is not binding on this Court. I understand that. Yes. But you want us to find as a matter of public policy that those Section 12s should go out. Well, that's certainly one of our arguments today, that there are public policy grounds why Section 12 can't be enforced. I don't think you have to go that far in reversing summary judgment if the Court wants to... Because you could have provided another reading for 671. Well, this Court doesn't have to go to the policy considerations in making its ruling because it's very clear that notice was provided and the proof of loss was provided in a timely basis. And on that basis, the trial court erred in determining that no notice was provided prior to the April 14, 2000 receivership filing. And if the Court wants to narrowly focus on specific facts rather than looking at the broad policy considerations, the Court could do so. And the Court can find for the receiver and enter a summary judgment for the receiver on those specific facts that notice was provided prior to the bond termination. And therefore, our claim was perfected prior to the receivership filing. So I don't think you have to reach... You say you use the word perfected. Claim perfected. Well... Why did it have to be perfected? In the trial court's view, notice of claim, notice of loss, and the proof of loss had to be provided prior to the April 14, 2000 receivership filing. Otherwise, you're out the box and the bond termination... I can understand why there has to be evidence of a claim or evidence of a right of action. That's what the statute refers to. It refers to claims and rights of action. It doesn't say anything about giving notice with respect to claims or rights of action. I believe the trial court erred in many respects, so I would agree with Your Honor, but I'm just telling you what the Court... That was a softball for you. I mean, but I'm just, you know, I'm leading them down the path where I'd like. I have some questions for them. I really don't have that many more for you. You can reserve the balance of your time, if you'd like. I would be happy to do so if the Court would like me to touch on any of the other arguments I presented. I'd be happy to do so, but I do believe that they are pretty cogently set forth in our papers and certainly we'll rely upon and... The briefing in this case on both sides was very good. Thank you. If there aren't any other questions, I'd be happy to reserve my time. Thank you. Good morning. My name is Stan Parker and I'm here on behalf of the appellee and the defendant below Kansas, Mr. Shurty. The trial court in two different decisions ultimately granted summary judgment primarily based upon the fact that the plaintiff admitted that the bond terminated by its own terms upon appointment of the receiver. Upon the appointment of the receiver. Correct. But there is another provision in the statute which would apply to this contract, right? I don't believe it applies, no. It doesn't apply? It doesn't apply. Can you think of any situation where 671 would apply to an insurance contract such as this one? Or are you saying that it's absolutely precluded from ever applying to this kind of a contract? And forgive me, there have been two statutes at issue here. I'm talking about what happens when the commissioner appoints the receiver and the extension of six months for the receiver to make an investigation. With respect to any claim or right of action that existed at the time that he became the receiver. As applicable here and what the trial court held is that statute applies to any limitations period that would expire. Expire. And he borrowed that language from a federal court district case written by Judge Pallmeyer, didn't he? Do you have any other case besides that one that says that's what the phrase otherwise expire means in the statute? To my knowledge, that is the only one I can cite. Now let me offer you another possibility and ask you to comment on it, okay? Let us suppose that the language of the statute says claim or right of action, okay? Did the claim exist, exist before the receiver was appointed? Did the right of action exist before the receiver was appointed? Forget about notice for a moment. The right of action did not exist because it had not been discovered. Why not? Because it had to have been discovered in order to exist. Under the terms of the contract, it has to be discovered within the period the contract is in effect. It would have to be discovered. Correct. Okay. And that actually was the basis. It wasn't based on notice. So even though all of the money was stolen before the receiver was appointed, the fact that the theft wasn't discovered automatically extinguishes their rights under the policy once the receiver was appointed. That's your understanding of how the policy works. Correct. Let me ask you this regarding discovery and under the context of this case, because the receiver was appointed because of criminal acts regarding interest. So there's no question that crimes occurred causing a receiver to be appointed. And to that extent, someone discovered in the general use of that word that crimes had occurred that could possibly be subject of a claim under the crime bond. And to that, specifics of the crimes were not identified or maybe were not discovered in that general sense, but it seems to me that enough was there to say that something was discovered that might have triggered coverage under the insurance policy and therefore that March letter was issued. Why isn't that enough? I would make two points in that regard, Your Honor. First, I believe the receivership, actually Office of Banking and Real Estate closed the institution and then appointed a receiver because there was $68 million that couldn't be found or accounted for. I don't believe that at that point in time. That's unusual, right? It is quite unusual. Indeed. Something that could have been explained by any other way. But who stole it, whether it was stolen, what happened to it, or who did it, I don't believe it was known at that time. It was subsequently determined that it was in fact stolen. Correct. And it was subsequently determined that all of the money was, all of the rascals had left with the money before the receiver was appointed. Correct. Okay. Correct. So we know that after the fact. Yes. Okay. Now we go back again to the statute. And reading your contract in conjunction with the statute. Now the statute says any claim or right of action which existed, which existed. It doesn't say anything about giving notice to the insurer. It says any claim or right of action that existed before the receiver was appointed. The receiver has six months to make a determination as to whether or not he has something that he can enforce against somebody. Okay? Okay. All right. Now the last time I looked at the West Law, the Black's Law Dictionary, which was this morning, I looked up the word claim. Okay? Now claim in the statute I think has its common and ordinary legal meaning here in Illinois. And it's the assertion of an existing right, even if contingent or provisional. Now presumably whoever lost the money and was insured against that loss, even though they didn't know they had lost the money, had the right or the claim that they could bring once it was discovered. Okay? Presumably. That's how I understand the law. Same is true of a right of action. That's the right to bring a specific case to court. You may have the right even though you don't know it yet. As a general proposition, that's very true. Yeah. I think most lawyers would agree with that. Okay. But if that right or claim exists according to the statute, then once the receiver is appointed, he has six months to investigate. For some reason, you have said that that right or claim expires. The right or claim expires when he's appointed. It expires at the same time that he's appointed. I think that's what Judge Aikman decided, and that's what Judge Pallmeyer probably decided in that federal case, I think, although the facts were a little different there in the federal case. But I don't quite understand legally how you can reach that position when the statute clearly says that claims or rights of action in favor of or against the beneficiary, which exist at the time that the receiver is appointed, continue on for another six months while he makes his investigation. And let me add something to that. Because it seems to me that if we read appointment of receiver as being the termination date, that April date, it transforms the appointment into a get-off-the-hook for the insurance company. At that point, the insurance company is off the hook because a receiver was appointed, and yet the Illinois statute says that's not what should happen. At least that's what the plain language suggests. Anyway, is it a get-off-the-hook, the appointment of the receiver? Not necessarily. How would it not? The receiver has the right to pursue any claim for which proof of loss has been filed before a bond terminates. I would agree with you wholeheartedly if all we had before us was your policy. But we also have a statute. And the statute doesn't say anything about establishing proof of loss. It just says a claim or right of action. Correct. But we're talking about a claim that exists under a contract, a claim for breach of contract. Good point, good point. Now, the question then becomes, does the statute in this trump the language of your contract? And that's the public policy question. And the trial court at least held that, first of all, that it was not directly applicable because the receiver in briefs, summer judgment briefs, and other documents filed below allege, the only date ever alleged, as the date of discovery of the loss was June 1. Taking that as the discovery date, the bond was not in effect at that time. I pretty much understand your position. It just seems to me, well, it doesn't seem to me. It's clear that under your analysis, the receiver, because there was no action with respect to notice and proof of loss, has no rights whatsoever against you, the insurer, because your policy terminated as of that date. Now, I can understand why your policy would terminate with respect to any future losses. The appointment of a receiver indicates that there's mischief afoot, and you're not required to ensure actions that took place outside the terms of the policy. And to terminate the policy with the appointment of the receiver makes perfect sense. In that context. But does it make perfect sense to not give the receiver the same right that an innocent member of the Board of Directors would have had on the same day? A member of the Board of Directors has no right to make a claim under the policy at all. It's contract. The insurer doesn't have the right to file a claim. That would be the institution, which no longer exists as of the date of the receiver's appointment. Right. It's dissolved. That's the entity that purchased the insurance. Right. And that's the contract that they purchased. And up until the day that the receiver was appointed, up until the very hour the receiver was appointed, that institution would have had a right. Correct? And you say that it's completely extinguished as of the appointment of the receiver as a matter of what? Sound policy? As a matter of? Of just plain contract. Contract. It's clear, unambiguous contract language that was the bargain. When would the statute be triggered at all? Are you going to take the position, he took the position, your opponent has taken the position, basically that the contract is against public policy or the statute, if it's read your way, that the statute is against public policy and should be repealed, you're taking the opposite position and saying basically if we read the statute that way, then the statute should be repealed too. Because it would be against public, it would be an infringement upon contract. With respect to this contract under these circumstances? Can you think of a contract where it would be applicable? With the six-month extension provided to the receiver? Can you think of a case where it would be applicable? Under financial insurance providers? It would be applicable in your case if they had gotten all of their information together, notice, proof of loss and everything else was pending when the receiver took over. Yeah, and assume that their two-year limit to file suit was a month away. Right. They would then have five more months. Okay. I think I do understand your position. I think I understand the trial judge's position. Okay. But the right to make a claim under the policy exists when they discover the loss. It doesn't exist before then? Not according to policy terms. That's discovery triggers the duty to give notice within 30 days. Discovery triggers the right to file the proof of loss. It starts the six-month period for that. It starts the two-year period to file the lawsuit. And it all expires upon the appointment of the receiver. The bond itself terminates upon appointment of the receiver. Right. I understand that you say that the institution itself must file the claim, but obviously institutions must act through someone. Correct. And would that someone in this case have been one or either of the two individuals that were involved in the financial thievery? And if so, why should the receiver, to the extent it's being put in the shoes of the institution, have to rely on discovery, or basically a confession by these individuals that they've stolen this money in order to get a claim under a policy that under its terms, these individuals are not seeking to discover anything. They're trying to hide it. The two individuals were both members of the board of directors. There was a third member of the board of directors. They were not employees of the company. They were not officers of the company. The president of the company, for example, could have made the claim. He's not one of the alleged thieves. And, in fact, on March 10th, the same day that that first letter was sent, the president of that independent trust called Kansas Bank Assurity Company, and they had a conversation. Mr. Town testified to it in his deposition. And in that conversation, the president of the corporation was adamant that they couldn't possibly have, money hadn't been stolen. It's a matter of, we don't know where it is at this point, but he was adamant that there was no, he had no knowledge of any theft, no reason to believe there had been any theft or any criminal wrongdoing. And it is that position that was taken by the receiver throughout the litigation up until the first summary judgment, or partial summary judgment order, when it became apparent that by taking that position, there was no claim because there was no discovery until after the bond term. And, again, it's not an issue of notice. It's a question of discovery. And subsequent to that decision, the receiver then tried to back off that position. So are you saying that the March letter was notice, but because it didn't give notice of a discovery, it wasn't notice under the policy? Yeah, whether or not it was sufficient notice, frankly, is an academic question because, yeah, there had been no discovery at that point in time. There was nothing really to give notice of. But the language of the letter says, you know, you're hereby notified that we might have sustained a loss or we might not. It might or might not be covered under your bond, and we know how much it is. It's really not notice of anything other than we think maybe we might have a claim sometime. Is there a case that you rely on to set out the parameters of what discovery means under the policy? I mean, how much information do you really have to have in hand? There are several cases, not in the bond context, but there are several cases in the briefs on both sides, actually. Essentially, the insured has to have knowledge of facts sufficient for them to have reason to believe that criminal conduct occurred, which would be a recoverable claim. Would you agree that your suspicion is not sufficient? Would you agree that, at least in the context of this case, that the interaction between your Section 12 and your policy, which is a very common section throughout the country and has been upheld in many cases, mostly in federal cases, mostly in cases where there's been no statute involved, which might put a restriction on it. And most of the federal cases say that. In the absence of any statutory construct, which would conflict with Section 12 language, the Section 12 language and the termination upon appointment of the receiver is perfectly appropriate, freedom of contract, et cetera, et cetera. Would you agree that the interaction between your Section 12, in this case, and the Illinois statute is a matter of first impression here in Illinois? Yes. I think your opponent agrees, too. And you would agree that there really is no, and never has been, any comparable federal statute that would address insurance because there is no national insurance, no national law that addresses insurance. These are matters that are addressed by state law. They are. And there are some state law cases, some insiders, Tenth Circuit opinion, for example, that came up out of Oklahoma. Okay. Your briefs have been very helpful. They pretty much covered the gamut of the cases as we have them up until today. There are not a lot of them, actually. And explain why the date of notice, June 1, 2000, is a fact determination by the judge that he can make binding on the parties when there is another date that could reasonably be decided to be the date controlling. March. June 1 is the only date that the receiver contended was the discovery date at any point. But he never disavowed that March letter, though, did he? No. No, but the March letter doesn't say anything about discovery. The March letter is, you know, you're notified. It has to do with notice. You're notified that we might have or maybe will in the future have a loss. Why would a lawyer, you know, if he wasn't giving the insurance company notice of a possible claim or right of action, a possible claim or right of action, why would he bother to write the letter? You're really basically saying that that letter had no legal impact on your obligations as an insurer at all, right? That you could have taken that letter and said, well, this letter doesn't comply with notice. I'm just throwing this one in the wastebasket. As a matter of fact, it was not thrown in the wastebasket. It led to some serious discussions, didn't it? Well, it led to a response from PBS. And most responsible insurers, as your client, they followed up on that letter, didn't they? You get a letter from a lawyer, you follow up on it. But that letter does not even say that they've discovered a loss. It says they have reason to believe that they might. But it suggests that they might have a claim or a right of action. Right. And then the question then becomes, back to the statute again, is that sufficient or enough to trigger the statute and the six months extra time that the... Now, and that again is an issue of first impression. Okay. However, even if that would trigger, the proof of loss is still out of time. It's still beyond... Well, no. I mean, if that triggers it so that this period would have expired, then everything is extended until six months after the receivership. The first unsworn proof of loss was submitted after that. The second sworn one a month later. Okay. So you still get to the problem of no timely proof of loss, no timely filing of this lawsuit. And usually timely filing of proof of loss, in your experience, your broad experience as an insurance lawyer, is that usually a question of law or a question of fact? If it is a contested fact, then it becomes a question of fact. If there is no other evidence, I mean, the date those two documents were submitted is uncontested. Okay. All right. Well, thank you very much. Thank you. You can wrap up. If you have no further questions, I'll sit down. All right. Thank you very much. Thank you. Counsel, no more than five minutes. Thank you, Your Honors. I would point the Court out to the liberal construction maxim. An insurance policy is to be liberally construed in favor of coverage. The Court should not bend over backwards to apply a policy exclusion, especially one that has not been proven by the insurance company to apply. And I don't think that the notice exclusion applies here. For the reasons cited in the brief and also discussed this morning, it's our position that notice was properly provided, that KBS had actual knowledge of the loss, and also that Mr. Towle waived notice of loss. The March 10, 2000 letter clearly provided notice of loss. What other purpose could it have provided? I think it's pretty clear. That document was part of the record. Maybe it just reflected the uncertainty that interest had regarding what happened to the money, but it's certainly not evidence of a discoverable event. The notice requirement in a policy is designed to provide the insurance company with enough information to begin its investigation. They certainly had enough information at their disposal to conduct an investigation, whether they did so or not. What kind of investigation would they have to conduct? Do they have to determine what happened to that money? They very easily could have taken any number of steps to determine that there was a $68 million shortfall in the escrow account. As we've seen, and I would ask you to review that Fidelity case involving independent trust, the reinsurer, Fidelity, had the exact same information before it in the exact same time frame, one day prior to notice being delivered here, and they were sparked into action. They determined that there was a big $68 million shortfall. Had KBS done what it was supposed to do, it very easily could have determined the same thing with very little effort. Whether they did so or not is not the point. The point is whether they had enough information at their disposal. When did that information get developed in the Fidelity case? We're talking about the exact time frame. So why did InTrust rely on that very same information to establish that a claim was discovered by InTrust to fall within the policy? Maybe we should have included that in our briefs. Nevertheless, I think by inclusion of the March 10, 2000 letter in the appendix to our summary judgment submittals. They can't have it both ways, I don't think. Well, I disagree, Your Honor. Having the March 10, 2000 letter before the court at all times during the summary judgment proceedings, pointing out to the court, please take a look at that March 2000 letter because that's the seminal notice provided in addition to KBS having actual knowledge, et cetera. Take a look at that March 10, 2000 letter because that's important. And for whatever reason, the court decided not to give due weight to that letter in applying the men-to-hold doctrine and holding us to one of the other dates suggested. I would submit that that was clearly erroneous. Frankly, I can't believe we're here before the appellate court based upon that particular narrow issue of notice, especially when Mr. Towle testified in his evidence deposition that they were not asserting a notice defense here. Frankly, I wish we were here after a full examination of the coverage issues before the trial court, but we're actually not here. On that particular front, we're here related to exclusions and a determination of non-coverage. Counsel, you're a lawyer. You live with what you've got. I do, and that's why I'm here and I'm asking this court, based on the record, not only to reverse the grant of summary judgment for the insurance company, but since there are no issues of contested fact, I would ask that judgment be entered for the receiver. At the absolute minimum. Wouldn't you agree, though, that even under the statute, most liberally interpreted in your favor and against Section 12 of the policy, even that requires some evidence of a claim or right of action in existence, in the record, that we can look to at the time that the receiver was appointed? And I believe the March 10, 2011 reports. Even if it doesn't comport, even if it is not actual, if it doesn't meet the notice requirements, it meets the possibility of a claim, possibility of a right of action. No question. And then KBS had actual knowledge because they had a telephone conversation, admittedly, with two interest employees on the same day. And, you know, we don't have a transcript of that telephone conversation. But that requires us to interpret a statute, which doesn't have a single case out there interpreting any of that language. That's true, but I think the facts are pretty apparent here that sufficient notice of loss and claim was provided to the insurance company at a date prior to the receivership filing. We're talking March 10 versus April 14 of 2000. They had a month to do something before the receivership filing. All right. Would you say for the very least there's certainly a question of fact? With respect to? To the notice. I don't think so. I think the court. That's reading it in your favor. I think. But at worst, it could be a question of fact. Well, if it's a question of fact, I think it's easily disposed of in taking a look at the March 10, 2000 letter in conjunction with the telephone conversation. You know what my position is with respect to notice. At the absolute minimum, I would ask the court to remand the matter back to the trial court for consideration of the coverage issues. As the court knows, we never reach those issues because of the grants of summary judgment for the insurer on the exclusions to the policy. I would ask the court to enter judgment under insuring agreements A, D, and E as specified in our briefs, but at a minimum remand the matter back for determination of coverage. All right. Well, thank you. Thank you, counsels. Thank you both. Thank you.